(Decided 20th November, 1885.)

WILHELMINA ZIMMER, and JOHN ZIMMER, her hus-
band, and EDWARD H. HARTUNG *vs.* CHARLES C.
MILLER.

*Appeal—Rehearing—Fraudulent conveyance—Evidence of*
*fraudulent intent—Burden of proof.*

No appeal lies from an order of a Court of equity dismissing a peti-
tion for a rehearing.

In order to justify the annulment of a deed as void under the Statute
of 13 Eliz., chap. 5, because made with intent to delay, hinder, or
defraud the creditors of the grantor, it is necessary to prove a
fraudulent intent.

Zimmer, &c. *vs.* Miller.

The intent with which a grantor executes a deed, must be gathered from the deed itself, and from his acts and the surrounding circumstances. And when those circumstances are of such a character as to lead to the inference that there has been a fraudulent intent, the *onus* of disproving fraud rests on the parties to the transaction.

Z. and his wife made a joint and several single bill to M. On making application for payment, M. was told by Z's wife that she intended to convey the property in question to her son, an infant. A deed for the property was in fact so made by her and Z. on the 20th of December, 1881, which was not recorded until the 11th of August, 1882. Neither of the grantors had any other property at the date of the deed, and after the conveyance they still continued in possession. On a bill filed by M. against the grantors and grantee to have the deed set aside for fraud, it was HELD:

That these facts imposed on the defendants the *onus* of proving a sufficient consideration, to sustain the validity of the deed.

APPEAL from the Circuit Court for Allegany County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, and BRYAN, J.

*J. H. Gordon,* for the appellants.

*William J. Read,* for the appellee.

YELLOTT, J., delivered the opinion of the Court.

The appellee, a creditor of Wilhelmina and John Zimmer, instituted a suit in the Circuit Court for Allegany County sitting in equity, for the purpose of obtaining a decree to annul and set aside a deed of conveyance of certain real estate made by them to Edward H. Hartung, an infant son of the said Wilhelmina by a former husband. The bill of complaint alleges, that when said deed was executed, the grantors were largely indebted to the plain-

tiff; that they had no other property from which a fund might be derived for the liquidation of their indebtedness, and that the conveyance of said real estate was fraudulently made for a simulated and pretended consideration, and with an intent to hinder, delay and defraud the plaintiff and other creditors in their efforts to accomplish the collection of their claims.

The plaintiff's evidence discloses the following facts, which appear upon the record without contradiction, as antecedently to the passage of the decree, the defendants adduced no proof, but simply relied upon the negation presented by their answer, which is not supported by the verification of an affidavit: Wilhelmina and John Zimmer, together with one Christian Hartung, now deceased, executed a joint and several single bill for the payment of the sum of money claimed by the appellee. This indebtedness existed when the deed was executed, and has never been liquidated. When the real estate was thus conveyed, neither of the grantors owned any other property. After the conveyance, they still continued in possession, and do not now own any other property. Anterior to the institution of these proceedings in equity, the other obligor died insolvent; and after the inception of this suit, an action at law was commenced against the surviving obligors, and has resulted in the rendition of a judgment against the said Wilhelmina and her husband.

It is further revealed by the evidence in the record, that antecedently to the execution of the deed, the plaintiff made application for the payment of the money due him, and was then told by Wilhelmina Zimmer that she intended to make a conveyance to her son, Edward, of the property now in controversy. This purpose was carried into effect by the deed executed on the 20th day of December, 1881, but which was not recorded until the 11th day of August, 1882.

Upon the presentation of these facts the learned Judge in the Circuit Court passed a decree setting aside the deed as fraudulent, and directing a sale of the real estate described in the proceedings for the purpose of providing a fund for the payment of the claims of the appellee and other creditors. Soon after the passage of this decree, a petition was filed for a rehearing. On this application, proceedings were had and testimony taken; and, after an argument by the solicitors of the respective parties the Court refused to re-open the case and dismissed the petition.

There has been an appeal taken from the decree, and also from the order dismissing the petition for a rehearing. It must be clearly apparent that there can be no recognition of the right of appeal from the order, and that an effort to bring the questions thus determined by the Court below into this Court for adjudication cannot be successful. There is, perhaps, no principle more firmly established by numerous decisions in this State than that there can be no appeal from the determination by a Court of equity of questions addressed to its sound discretion. There is a perceptible analogy between an application for a rehearing and a motion for a new trial in a Court of law; and in either case the party affected by an adverse ruling cannot invoke the interposition of an appellate tribunal for the correction of supposed errors. *Waring, et al. vs. Turton, Trustee,* 44 *Md.,* 546; *Hughes vs. Jones,* 2 *Md. Ch. Dec.,* 289.

It follows that none of the proceedings growing out of the application for a rehearing are properly before this Court for revision; and that the propriety of the decree, annulling the deed of conveyance and directing a sale of the real estate, in order to create a fund for the liquidation of the claims of creditors, is the sole question presented for solution.

In the Circuit Court the transactions which resulted in the deed of conveyance were adjudged to be covinous, and the deed was declared to be null and void on the ground that the Statute of 13th Elizabeth, ch. 5, which has always been recognized as operative in this State, renders invalid any transfer of real estate made with intent to delay, hinder or defraud the creditors of the grantor. In order to justify the annulment of a deed it is, therefore, necessary to prove a fraudulent intent, and here an apparent difficulty is interposed; for although the actions of men can be conclusively proven, the motives which lurk in their bosoms and control their actions are not susceptible of positive proof. In most cases fraud must be inferred from facts established by competent evidence. As has been said by the Supreme Court of Michigan in the very recent case of *Hough vs. Dickerson,* 24 *N. W. Reporter,* 812, "Fraud, like any other fact, may be proved by any facts or circumstances which satisfy the mind by a preponderance of the evidence in any given case of its existence, and many times it is inferred, and properly so, from circumstances, and often cannot be proved in any other way."

As was said by this Court in *Ecker vs. McAllister,* 45 *Md.,* 309, "The intent with which a grantor executes a deed must be gathered from the deed itself, and from his acts and the surrounding circumstances." It would therefore seem to be an established rule, that when those circumstances are of such a character as to lead to the inference that there has been a fraudulent intent, the *onus* of disproving fraud rests on the parties to the transaction. As the Court said in the case just cited, "Every person of sound mind is presumed to intend the necessary, natural or legal consequences of his deliberate act." If, therefore, the grantor, knowing that he has creditors, makes a disposition of his entire property, placing it beyond their reach, under such circumstances as appear in this record, it may be presumed that he was actuated by an intent

which ought not to receive the sanction of a Court of equity ; and when he is confronted by this presumption, it is incumbent on him to meet it with countervailing proof.

The record in this cause contains evidence which establishes the truth of the averment, that the grantors were indebted to the appellee, and that they had no other property except that transferred to their co-defendant in the suit, by the deed of conveyance which has thus been assailed. It is not intended to assert, as a rule not to be deviated from in any case, that a party indebted may not make a conveyance without encountering the presumption of a covinous design. But, in view of the facts already recited, and of the further proof in this cause, that when applied to for payment one of the grantors expressed the intention to convey the property to her infant son, that such conveyance was actually made, and that the grantors have subsequently remained in possession, proof of the payment of a sufficient consideration was essential to the maintenance of the validity of the deed. As Chancellor KENT remarked in an analogous case, "To rest entirely on the naked assertion of payments, without any proof in support of them, is a circumstance leading to the most unfavorable inferences." *Hildreth vs. Sands*, 2 *John. Ch.*, 45. And when, as the proof shows, the deed was withheld from record for an unusual period of time, the secresy of the transaction adds weight to the presumption which it is incumbent on the parties to the conveyance to overcome by satisfactory evidence. In the case of *Callan vs. Statham, et al.*, 23 *Howard*, 477, where the facts and circumstances were, in many respects, similar to those revealed by this record, the Supreme Court of the United States determined that "proof of the payment of the consideration was vital to uphold the deed, when the evidence was in the defendant's possession, and the transaction was secret."

In the absence of such proof, there was no error in the adjudication of the Circuit Court, and its decree should therefore be affirmed.

> *Decree affirmed, with*
> *costs to appellee.*

(Decided 20th November, 1885.)